**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**STEVEN CRUMP,**

     **Plaintiff,**

     **v.**                            **CASE NO.  24-3044-JWL**

**SUMMIT COMPANY, et al.,**

     **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Johnson County Adult Detention Center in Olathe, Kansas ("JCADC"). Plaintiff has been granted leave to proceed in forma pauperis. This matter is before the Court for screening Plaintiff's Complaint (Doc. 1). Also before the Court is a motion (Doc. 3) filed by Plaintiff.

**I.  Nature of the Matter before the Court**

Plaintiff alleges that the defendants denied him and the other inmates in 2A cell block the ability to purchase pens from February 13, 2024, to March 13, 2024. (Complaint, Doc. 1, at 1, 2.) He alleges that pens were removed from the commissary in preparation for inspection by the National Commission on Correctional Healthcare ("NCCHC"). *Id.* According to the Complaint, a notice was posted at the JCADC around February 20, 2024, informing inmates to contact the NCCHC before March 1 to "provide comments regarding [JCADC]'s health services." *Id.* at 9, 23. He states that the day after the inspection, pens were returned to the commissary and were handed out for free. *Id.* at 4, 10. Plaintiff claims that "[d]eputies and Commissary Lady told

inmates that 'management' told them they would be written up or fired if caught giving inmates pens." *Id*. at 4, 9.  Plaintiff attaches a list of eight (8) other inmates, with signature of each, who witnessed and can attest to the pen ban. *Id*. at 22.

Plaintiff states that he set a personal deadline of March of 2024 for completion of his § 1983 complaint about medical care at the JCADC.  *Id*. at 7.  He asserts that his "valid effort to finish the 1983 [complaint] and have it processed by March was STIFLED by a JCADC, Summit Commissary, BAN ON WRITING PENS." *Id.*  Plaintiff alleges that the lack of pens at this pivotal point caused him an inability to sleep and "REAL thoughts of suicide." *Id*. at 8.  He sought mental health assistance, and the dosage of an existing medication was increased and a new medication added. *Id*.  Plaintiff alleges that this caused him to suffer erratic heart beats, blurred vision, severe chest and side pain, dizziness, fatigue, and trouble breathing. *Id.*

The Complaint further alleges that Plaintiff managed to speak with one of the NCCHC inspectors.  He told the inspector that pens were not available to the inmates on 2A.  According to Plaintiff, the inspector then told him that "had he wrote [sic] [ahead of time,] something could have been done about Crump's medical distress." *Id*. at 15.

Plaintiff asserts violation of his right to access the courts under the First Amendment and his Fourteenth Amendment right to due process. *Id*. at 4.   He further asserts claims for violation of 42 U.S.C. § 1985 (conspiracy among the defendants), 42 U.S.C. § 1986 (failure to intervene), Fourteenth Amendment substantive due process; and intentional infliction of emotional distress.[1] *Id*.

Plaintiff names the following defendants: the Summit Company, contracted commissary provider at the JCADC; the Johnson County Board of Commissioners; Summit administrators #1-

---

[1] Plaintiff also includes counts titled "Monell Claim" and "Respondeat Superior Claim." *Id*. at 6.  These are not separate causes of action but theories of supervisory liability.

4; JCADC administrators #1-4; Sheriff's office administrators #1-4; Sheriff Calvin Hayden; the city of Olathe; the commissary lady; and Sheriff's Deputies #1-4.  Plaintiff seeks relief in the form of over $3.5 million in compensatory damages and over $6.5 million in punitive damages.  *Id*. at 6.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S.

Ct. at 1974).

## III.  DISCUSSION

It is well-established that a prison inmate has a constitutional right of access to the courts. The Supreme Court has acknowledged that "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith,* 430 U.S. 817, 824–25 (1977). While the denial of writing materials for short periods may be excusable, its nonavailability for days and sometimes weeks is unconstitutional. *Morgan v. Nevada Bd. of State Prison Com'rs*, 593 F. Supp. 621 (D. Nev. 1984).

However, it is equally well-settled that in order "to present a viable claim for denial of access, the inmate must allege and prove prejudice arising from Defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").  In order to satisfy the actual injury requirement, the plaintiff must show that, by denying him access to writing materials, prison officials frustrated or impeded his ability to file or litigate a non-frivolous action.  *Id.* at 351, 354–55; *see Faircloth v. Schwartz*, 2014 WL 446663 (D. Colo. Sept. 10, 2014); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions.").  He may allege actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. *Lewis,* 518 U.S. at 350, 353.

Plaintiff's allegations are not that the JCADC refused to provide him with a pen or paper because he is indigent.  He alleges that the commissary stopped selling pens to the population for about a month around the time of an inspection.  Plaintiff appears to be complaining about both his inability to submit a grievance to the inspection team and his inability to file a lawsuit during the time that pens were not available in the commissary.

The inability or interference with submitting an administrative grievance has been found not to state an access to the courts claim.  "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (quoted in *Boyd v. Werholtz,* 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished)).

As for the lawsuit, the Court takes judicial notice of the fact that Plaintiff's complaint in *Crump v. Unified Gov't of Johnson Count, et al.*, Case No. 24-3036, was filed on March 13, 2024. While Plaintiff may have had a self-imposed deadline of March, 2024, to file the lawsuit, there was no such official filing deadline.  Moreover, missing his personal deadline by less than two weeks may not rise to the level of actual prejudice required to state an access to the courts claim.

Nonetheless, the Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the JCADC.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate JCADC officials to prepare and file a *Martinez* report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

### IV.  Motion

Plaintiff has filed a Motion for Preliminary Injunction, Emergency Injunction, and Partial Summary Judgment (Doc. 3).  The motion summarizes the allegations made in the Complaint about the inspection and his inability to submit prior comment to the NCCHC due to the ban on pens.  (Doc. 3, at 2.)  Plaintiff asks the Court to grant him partial summary judgment and issue him an award in such an amount that will cover his physical and mental rehabilitation, surgery, and pain and suffering.  (Doc. 3, at 2.)

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council,*

*Inc.*, 555 U.S. 7, 22 (2008).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation.  18 U.S.C. § 3626(a)(2).  Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above.  *Little*, 607 F.3d at 1251.  Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

"[B]ecause the purpose of preliminary injunctions is to preserve the relative positions of the parties until trial, they are specifically disfavored if they alter the status quo, are mandatory (as opposed to prohibitory), or afford the movant all the relief that could be recovered after a full trial." *Rudnick v. Raemisch*, 731 F. App'x 753, 755 (10th Cir. 2018) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005)).  "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (quoting *Schrier*, 427 F.3d at 1259).

Here, Plaintiff requests a mandatory injunction that would alter the status quo and provide him with the primary relief he could recover after a trial.  Moreover, he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal and has not demonstrated a likelihood of imminent irreparable harm.  For these reasons, the Court finds that

Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted.  Thus, Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** that**:**

(1)     The JCADC officials shall submit the *Martinez* Report by **May 11, 2024**.  Upon the filing of that Report, the Court will screen Plaintiff's Complaint.  If the Complaint survives screening, the Court will enter a separate order for service.

(2)     Officials responsible for the operation of the JCADC are directed to undertake a review of the subject matter of the Complaint:

      a.     To ascertain the facts and circumstances;

      b.     To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

      c.     To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the JCADC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The JCADC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4)     Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)     Authorization is granted to the JCADC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)     No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

Copies of this order shall be transmitted to Plaintiff, to the Johnson County Sheriff, and to the Johnson County District Attorney.

**IT IS SO ORDERED.**

**Dated April 11, 2024, in Kansas City, Kansas.**


**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**