IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN CRUMP,

     **Plaintiff,**

     v.                                 CASE NO.  24-3044-JWL

SUMMIT COMPANY, et al.,

     **Defendants.**

**MEMORANDUM AND ORDER
TO SHOW CAUSE**

Plaintiff brings this pro se case under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed in forma pauperis.  Plaintiff is detained at the Johnson County Adult Detention Center in Olathe, Kansas ("JCADC").

The Court entered a Memorandum and Order ("M&O") (Doc. 6) finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of the JCADC.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  The Court ordered JCADC officials to prepare and file a *Martinez* Report, stating that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 6, at 6.)  The *Martinez* Report (Doc. 20) (the "Report") has now been filed, and Plaintiff's Complaint is before the Court for screening in light of the Report.  The Court's screening standards are set forth in the M&O.  *See* Doc. 6, at 4-5.

**I.  Nature of the Matter before the Court**

    Plaintiff alleges that the defendants denied him and the other inmates in cell block 2A the ability to purchase pens from February 13, 2024, to March 13, 2024.  (Complaint, Doc. 1, at 1, 2.)

He claims that pens were removed from the commissary in preparation for inspection by the National Commission on Correctional Healthcare ("NCCHC"). *Id*. According to the Complaint, a notice was posted at the JCADC around February 20, 2024, directing inmates to contact the NCCHC before March 1 to "provide comments regarding [JCADC]'s health services." *Id*. at 9, 23. He states that the day after the inspection, pens were returned to the commissary and were handed out for free. *Id*. at 4, 10. Plaintiff claims that "[d]eputies and Commissary Lady told inmates that 'management' told them they would be written up or fired if caught giving inmates pens." *Id*. at 4, 9. Plaintiff attaches a list of eight (8) other inmates, with signature of each, who witnessed and can attest to the "pen ban." *Id*. at 22.

Plaintiff states that he set a personal deadline of March, 2024, for completion of his § 1983 complaint about medical care at the JCADC. *Id*. at 7. He asserts that his "valid effort to finish the 1983 [complaint] and have it processed by March was STIFLED by a JCADC, Summit Commissary, BAN ON WRITING PENS." *Id*. Plaintiff alleges that the lack of pens at this pivotal point caused him an inability to sleep and "REAL thoughts of suicide." *Id*. at 8. He sought mental health assistance, and the dosage of an existing medication was increased and a new medication added. *Id*. Plaintiff alleges that this caused him to suffer erratic heart beats, blurred vision, severe chest and side pain, dizziness, fatigue, and trouble breathing. *Id*.

The Complaint further alleges that Plaintiff managed to speak with one of the NCCHC inspectors. He told the inspector that pens were not available to the inmates on 2A. According to Plaintiff, the inspector then told him that "had he wrote [sic] [ahead of time,] something could have been done about Crump's medical distress." *Id*. at 15.

Plaintiff asserts violation of his right to access the courts under the First Amendment and his Fourteenth Amendment right to due process. *Id*. at 4. He further asserts claims for violation

of 42 U.S.C. § 1985 (conspiracy among the defendants), 42 U.S.C. § 1986 (failure to intervene), Fourteenth Amendment substantive due process; and intentional infliction of emotional distress.[1] *Id*.

Plaintiff names the following defendants: the Summit Company, contracted commissary provider at the JCADC; the Johnson County Board of Commissioners; Summit administrators #1-4; JCADC administrators #1-4; Sheriff's office administrators #1-4; Sheriff Calvin Hayden; the city of Olathe; the commissary lady; and Sheriff's Deputies #1-4.  Plaintiff seeks relief in the form of over $3.5 million in compensatory damages and over $6.5 million in punitive damages.  *Id*. at 6.

## II.  The *Martinez* Report

The Report (Doc. 20) disagrees with some of Plaintiff's factual allegations and disputes his asserted motivation for the absence of pens in the commissary.  At the JCADC, indigent inmates are allowed to purchase one pen and three stamped envelopes per week for legal work purposes. (Doc. 20-2, at 1; Doc. 20-3, at 2.)  Inmates place commissary orders once a week, and the orders are delivered a day or so later.  According to the Report, there were two order dates (March 4, 2024, and March 11, 2024) when pens were not available to order from the commissary.  *Id*.  The Report asserts that this was due to unavailability from the supplier.  (Doc. 20, at 2.)

Records show that Plaintiff ordered a pen and three envelopes on February 26, 2024.  (Doc. 20-4, at 3; Doc. 20-7, at 3.)  The pen was delivered to him on February 28, 2024.  (Doc. 20-2, at 1; Doc. 20-4, at 4.)  Then, on March 13, 2024, during the delivery of the March 11 orders, all inmates received a free pen due to the supply issue.  (Doc. 20-2, at 1.)

---

[1]  Plaintiff also includes counts titled "Monell Claim" and "Respondeat Superior Claim."  *Id*. at 6.  These are not separate causes of action but theories of supervisory liability.

The NCCHC conducted its survey of the JCADC from March 6 to March 8, 2024.  (Doc. 20-2, at 2.)  The NCCHC notice posted prior to the survey stated that comments should be submitted at least 5 days prior to the survey.  (*Id*.; Doc. 20-7, at 1.)  Plaintiff received a pen on February 28.  (*Id*. at 1.)  He could have submitted comments to the NCCHC on that or the following day.

The Report further does not show that anyone searched the facility and collected all writing implements at any point.

## III. DISCUSSION

As explained in the M&O ordering the Report, It is well-established that a prison inmate has a constitutional right of access to the courts.  The Supreme Court has acknowledged that "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith,* 430 U.S. 817, 824–25 (1977).  While the denial of writing materials for short periods may be excusable, its nonavailability for days and sometimes weeks is unconstitutional. *Morgan v. Nevada Bd. of State Prison Com'rs*, 593 F. Supp. 621 (D. Nev. 1984).

However, it is equally well-settled that in order "to present a viable claim for denial of access, the inmate must allege and prove prejudice arising from Defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").  In order to satisfy the actual injury requirement, the plaintiff must show that, by denying him access to writing materials, prison officials frustrated or impeded his ability to file or litigate a non-frivolous action.  *Id.* at 351, 354–55; *see Faircloth v. Schwartz*, 2014 WL 446663 (D. Colo. Sept. 10, 2014); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To

present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."). He may allege actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. *Lewis,* 518 U.S. at 350, 353.

Plaintiff's allegations are not that the JCADC refused to provide him with a pen or paper because he is indigent. He alleges that the commissary stopped selling pens to the population for about a month around the time of the NCCHC inspection. Plaintiff complains about both his inability to submit a grievance to the inspection team and his inability to file a lawsuit during the time that pens were not available in the commissary.

The Report asserts that the actual time that pens were not available to purchase was March 4, 2024, to March 13, 2024. Plaintiff received a pen on February 28 and another on March 13.

Regardless of the timeframe that new pens were unavailable, the interference with submitting an administrative grievance does not state an access to the courts claim. "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (quoted in *Boyd v. Werholtz,* 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished)).

As for the lawsuit, the Court takes judicial notice of the fact that Plaintiff's complaint in *Crump v. Unified Gov't of Johnson Count, et al.*, Case No. 24-3036, was filed on March 13, 2024. Plaintiff argues that he had a self-imposed deadline of "March", 2024, to file the lawsuit. He met that deadline. More importantly, there was no official filing deadline that Plaintiff missed. Plaintiff does not demonstrate the actual prejudice required to state a constitutional access to the courts claim.

The Complaint also mentions claims for violation of 42 U.S.C. § 1985 (conspiracy among the defendants), 42 U.S.C. § 1986 (failure to intervene), Fourteenth Amendment substantive due process; and intentional infliction of emotional distress.

Plaintiff's bald allegation of a conspiracy is insufficient to state a claim under 42 U.S.C. § 1985. To state a claim for conspiracy, Plaintiff must include in his Complaint enough factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id.* Here, Plaintiff provides no factual information to demonstrate any type of agreement was made between anyone. Such conclusory allegations fail to state a plausible claim for relief.

Plaintiff's conspiracy allegation under § 1985 also fails because Plaintiff has not shown discriminatory animus against him based on his membership in a protected class. *See Garcia v. Yniquez*, 2022 WL 2734636, at *2 (10th Cir. July 14, 2022) (unpublished). Section 1985(3) requires "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *JLPR, LLC v. Utah Dep't of Ag. and Food*, 2022 WL 2230280, at n.15 (D. Utah May 16, 2022) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) (a § 1985 claim lacking an allegation of "class-based or racial discriminatory animus" must fail)); *see also Chubb v. Brownback*, 2016 WL 5410615, at *7 (D. Kan. Sept. 28, 2016) ("To assert a plausible claim under § 1985(3), plaintiff must allege a conspiracy based on racial animus.") (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015)). Plaintiff makes no such allegations, and therefore § 1985 does not provide the Court with a basis for jurisdiction. Plaintiff has failed to state a valid claim of conspiracy and should show good cause why this claim should not be dismissed.

Likewise, 42 U.S.C. § 1986 imposes liability for damages if a person has "knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . .." 42 U.S.C. § 1986.  Thus, "the § 1986 claim is dependent upon the existence of a valid claim under § 1985." *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985) (citations omitted); *see also Cline v. Utah*, 2020 WL 2476168, at *2 (D. Utah May 13, 2020) ("Without a valid claim under § 1985, Plaintiffs' § 1986 claim similarly fails."); *Chubb v. Brownback*, 2016 WL 5410615, at *7 (D. Kan. Sept. 28, 2016) (because plaintiff failed to allege a plausible claim for relief under § 1985(3) "his claims under § 1986 also fail").  As stated above, Plaintiff's claim under § 1985 fails and therefore his § 1986 claim also fails.

Substantive due process "bars certain arbitrary, wrongful government actions 'regardless of the fairness of procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citation omitted).  Where, as here, a claim falls under a more specific provision of the Constitution, substantive due process does not provide any greater protection.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998).

Last, intentional infliction of emotional distress is a state law claim.  State law violations are not grounds for relief under § 1983.  "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (citation omitted). This Court is not obliged to exercise supplemental jurisdiction over any state law claims, even if valid, given that Plaintiff's federal constitutional claims are subject to dismissal.  *See* 28 U.S.C. § 1367(c)(3).  Because the Court finds that Plaintiff's federal claims are subject to dismissal, the Court will not assert supplemental jurisdiction over any state law claims.

**IV.  Response Required**

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims."  *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).  The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence."  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).  Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact.  *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.  Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **September 26, 2024,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed.

**IT IS SO ORDERED.**

**Dated August 26, 2024, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**